UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| NANCY J. WETHERILL | ) | Civ. 08-5077-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETE R. GEREN, Secretary of the Army; | ) | ORDER GRANTING |
| THE ARMY NATIONAL GUARD; | ) | MOTIONS TO DISMISS |
| STEVEN R. DOOHEN, Brigadier General, | ) | |
| in his official capacity as Adjutant | ) | |
| General of the South Dakota National | ) | |
| Guard; | ) | |
| THEODORE JOHNSON, Brigadier | ) | |
| General, in his official capacity; and | ) | |
| THE SOUTH DAKOTA NATIONAL | ) | |
| GUARD, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Nancy Wetherill, brought this action alleging discrimination based on her gender and on race and national origin. Defendants Steven Doohen, Theodore Johnson, and the South Dakota National Guard move to dismiss. Defendants Pete Geren and the Army National Guard move to dismiss. For the reasons stated below, both motions are granted.

**FACTUAL BACKGROUND**

Wetherill joined the Army National Guard in 1974 and was commissioned on July 4, 1977. From 1982 to 2008, Wetherill served in Rapid City, South Dakota, as a full-time military technician. On July 1, 1999, she achieved the

rank of colonel, and on April 1, 2007, Wetherill became the Director of Operations, Military Technician, for the South Dakota Army National Guard.

Under 10 U.S.C. § 14507(b), a colonel is removed from active status the first day of the month after the month in which the officer completes 30 years of commissioned service. According to this statute, Wetherill's Mandatory Removal Date (MRD) was July 31, 2007. In May 2007, Major General Michael A. Gorman, who was at the time Adjutant General of the South Dakota Army National Guard, submitted a request to the National Guard Bureau (NGB) that Wetherill's MRD be extended to December 30, 2010. That is the date on which Wetherill could have received full annuity payments under the Civil Service Retirement System; an earlier MRD would mean that she would collect a reduced annuity payment. On July 18, 2007, NGB approved this request. Shortly thereafter, Major General Gorman retired as Adjutant General and was replaced by Brigadier General Steven Doohen.

On January 23, 2008, Adjutant General Doohen asked the NGB to revoke the MRD extension previously granted to Wetherill and to recognize April 30, 2008, as her new MRD. On February 2, 2008, Brigadier General Theodore Johnson and Colonel Dennis Flanery informed Wetherill that on April 30, 2008, she would be terminated from her military technician position for "force management" reasons. Then, Adjutant General Doohen stayed Wetherill's MRD from April 30, 2008, to July 31, 2008. On February 5, 2008,

the NGB granted Adjutant General Doohen's request to revoke Wetherill's previous MRD and held that the "effective date of separation is 31 July 2008." Docket 1 ¶ 17. Wetherill protested the modification of her MRD and made allegations of gender and racial discrimination, all to no avail. On May 8, 2008, Wetherill was given a new work assignment, which she claims involved work that was "intended to be performed by persons holding a rank lower than Colonel." This new assignment also forced her to work by herself in an isolated building. Ultimately, Wetherill was terminated from her military technician position on July 31, 2008.

Wetherill states that she was the only female Asian-American officer in the South Dakota Army National Guard and was the only female in the South Dakota Army National Guard "to have served at the 06 level in a non-special branch." Id. ¶ 22. Finally, Wetherill claims that "[n]o other technician in the South Dakota Army National Guard has ever been denied the opportunity to receive an unreduced annuity as a result of having an MRD waiver being denied, modified or revoked." Id. ¶ 20.

Wetherill's complaint states that the decision to revoke her MRD waiver was due to discrimination based on her gender, race, and national origin, and that the act of moving Wetherill to a different work station in May 2008 was in retaliation for her complaints of discrimination. Because of defendants' discrimination, Wetherill alleges that she was deprived of receiving a full

retirement annuity, future promotions, and substantial pay increases, and she suffered humiliation, embarrassment, and shame.

## STANDARD OF REVIEW

Rule 12(b)(6) requires the court to review only the pleadings to determine whether they state a claim upon which relief can be granted.  In considering a motion to dismiss, the court assumes all facts alleged in the complaint are true, construes the complaint liberally in the light most favorable to the plaintiff, and should dismiss only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).  "The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 191, 104 S. Ct. 3012, 3017, 82 L. Ed. 2d 139 (1984).

Defendants also assert that this action should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.  "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve

4

a federal controversy.'" Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (citations omitted).  Because Wetherill brings this suit under 42 U.S.C. § 2000e, which grants federal courts jurisdiction over discrimination suits such as this one, the court concludes that the motion to dismiss is properly evaluated under Rule 12(b)(6), and not as one for lack of subject-matter jurisdiction.  See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (stating that there is subject-matter jurisdiction "if the right of the petitioners to recover under the complaint will be sustained" if there is a dispute as to the construction of federal law); see also Wood v. United States, 968 F.2d 738, 739 (8th Cir. 1992) (affirming dismissal of discrimination suit of National Guard airman for failure to state a claim under 12(b)(6)).

## DISCUSSION

Defendants argue that Wetherill's claims should be dismissed because they are nonjusticiable under the doctrine established in Feres v. United States, 340 U.S. 135, 71 S. Ct. 153, 95 L. Ed. 152 (1950).  Defendants further contend that the court lacks subject matter jurisdiction because Title VII does not extend to military personnel.  Finally, because Feres and its progeny bar civil suits by military members against the armed services, the state defendants argue that the Eleventh Amendment prohibits Wetherill's claims against them.

In response, Wetherill states that dismissal at this stage would be inappropriate, "because it remains to be seen whether or not the challenged conduct in this case involved 'an assessment of [Wetherill's] military qualifications.'" Docket 15, page 7 (citing Hupp v. United States, 144 F.3d 1144, 1148 (8th Cir. 1998)). Therefore, argues Wetherill, the court is unable to evaluate whether, under Eighth Circuit precedent, her Title VII claim is nonjusticiable. Discovery, she claims, will reveal that the challenged conduct was not based on consideration of military qualifications, rendering them reviewable by this court.

In Feres v. United States, the United States Supreme Court found that military service members could not bring negligence suits against the military. 340 U.S. at 146. Noting the unique relationship between the military and its members, the Court concluded that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146. In a subsequent case, the Supreme Court reiterated the rationale of Feres: "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment." Chappell v. Wallace, 462 U.S. 296, 299, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983). Courts

6

have expanded the scope of the Feres rationale to shield the military from Bivens actions and liability under 42 U.S.C. § 1983.  See, e.g., United States v. Stanley, 483 U.S. 669, 684, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987) (Bivens action); Watson v. Arkansas Nat'l Guard, 886 F.2d 1004, 1008 (8th Cir. 1989) (stating that the concern for "disruption of military discipline upon which Feres, Chappell, and Stanley are based applies equally when a court is asked to entertain an intra-military suit under § 1983").  Consequently, "[t]he permissible range of lawsuits by members of the service against their superior officers 'is at very least, narrowly circumscribed.' " Wood v. United States, 968 F.2d 738, 739 (8th Cir. 1992) (citation omitted).

The availability of Title VII of the Civil Rights Act of 1964 to military service members is similarly hindered.  Title VII waived state's sovereign liability in the context of discrimination claims "affecting employees . . . in military departments." 42 U.S.C. § 2000e-16(a).  As discussed further below, however, courts have generally interpreted this waiver as applying only to civilian employees of military departments, not to members of the armed forces. Johnson v. Alexander, 572 F.2d 1219, 1224 (8th Cir. 1978) (stating that "neither Title VII nor its standards are applicable to persons who enlist or apply for enlistment in any of the armed forces of the United States"); see also Brown v. United States, 227 F.3d 295, 298 n.3 (5th Cir. 2000) (surveying circuit

courts adopting the same position); Bryant v. Dep't of Defense, Inspector General, 2008 WL 1699620, *3 (D. Minn. Apr. 9, 2008).

Wetherill is a member of the National Guard. National Guard military technicians, such as Wetherill, occupy a "dual status" position, which the Eighth Circuit has described as "hybrid." Wood v. United States, 968 F.2d 738, 739 (8th Cir. 1992). While military technicians are described by statute as "civilian" positions, individuals holding those positions must also be members of the National Guard. Id.; 10 U.S.C. § 10216(a) (stating that "a military technician (dual status) is a Federal civilian employee who– . . . (B) is required . . . to maintain membership in the Selected Reserve"). With regard to the availability of Title VII to National Guard military technicians like Wetherill, the hybrid nature of the position "renders it susceptible to the doctrine restricting review of military decision-making," raising "justiciability concerns." Wood, 968 F.2d at 739.

In Hupp v. United States, 144 F.3d 1144 (8th Cir. 1998), the Eighth Circuit examined a claim of discrimination from a National Guard military technician that is similar to Wetherill's complaints here. In Hupp, the plaintiff conceded that the Feres doctrine would bar challenges to employment decisions that concerned the military technician's "military qualifications." Id. at 1147. Wetherill makes a similar concession. Docket 15, page 6 (admitting that dismissal may be appropriate if discovery were to reveal that the

8

challenged conduct was based on an assessment of her military qualifications). With regard to challenges to decisions made about a military technician's *civilian* position, however, the Eighth Circuit in Hupp assumed without deciding that Title VII may apply, and went on to find that because the National Guard's conduct here "included consideration of both military and civilian qualifications," it was nonjusticiable under Feres. Hupp, 144 F.3d at 1148 (stating that the hiring issue involved an "assessment of military qualifications," implicating Feres); see also Kearsley v. Brownlee, 2004 WL 256711, *2 (D. Minn. Feb. 10, 2004) (finding no jurisdiction when "selection and retention decisions" regarding military technicians were based "at least in part, upon a consideration of the ability to perform the ALSE tasks in a military capacity" and when his civilian and military duties were intertwined and implicated the "military's unique structure").

Some courts of appeal have similarly acknowledged that there may be liability under Title VII for some decisions that involve the purely civilian aspects of the position of National Guard military technician. Walch v. Adjutant General's Dep't of Texas, 533 F.3d 289, 299 (5th Cir. 2008) (stating that "claims that were solely a result of the civilian position would be justiciable"); Luckett v. Bure, 290 F.3d 493, 499 (2d Cir. 2002) (stating that Title VII applies to National Guard dual-status employees "except when the challenged conduct is integrally related to the military's unique structure");

9

Mier v. Owens, 57 F.3d 747 (9th Cir. 1995) (holding that "Title VII coverage . . . encompasses actions brought by Guard technicians except when the challenged conduct is integrally related to the military's unique structure"); Laurent v. Geren, 2008 WL 4587290, *3 (D. Virgin Is. Oct. 10, 2008) (denying motion to dismiss and finding that creating a "sexually hostile environment is not integrally related to the military's mission" and that discriminatory conduct may be actionable because it "affected Laurent in her capacity as a civilian"). Other circuits have found that military technicians are "irreducibly military in nature," and, therefore, civil suits are always nonjusticiable under Feres and its progeny. Fisher v. Peters, 249 F.3d 433, 443 (6th Cir. 2001) (Title VII); see also Wright v. Park, 5 F.3d 586, 588-89 (1st Cir. 1993) (Bivens action) (finding that National Guard technicians' positions are "military in nature" because they "are encompassed within a military organization and require the performance of work directly related to national defense").

Under any of these analyses used by various courts of appeal, Wetherill's Title VII claims are barred. The decisions of the National Guard and its employees with regard to Wetherill's MRD are undeniably military in nature. Under 10 U.S.C. § 14507, which discusses removal from military active status, Wetherill's Mandatory Removal Date (MRD) was set for July 31, 2007. The National Guard Bureau both extended her MRD and then retracted that extension. While her removal from active-status compromised her civilian

employment at that time, the action taken by defendants was a military personnel management decision, because it only involved her military status and it was not solely related to her civilian employment. See 32 U.S.C. § 709(f)(1)(A) (stating that a military technician who is separated from the National Guard will also be separated from employment as a military technician); Williams, 533 F.3d at 368 (stating that although the military's actions had "a civilian component" in that the discharge made him ineligible for a civilian position, "the decision to discharge him . . . [was] a military personnel management decision which was integral to the military structure and which we will not second guess"); Overton v. New York State Division of Military and Naval Affairs, 373 F.3d 83, 96 (2d Cir. 2004) (dismissing Title VII claims because "[a]ny attempt to dissect and analyze the civilian relationship between Overton and Fletcher, with its military dimensions, . . . would itself threaten to intrude into their military relationship," an area where courts are "ill-equipped to determine the impact upon discipline that . . . [such an] intrusion upon military authority might have") (citations omitted). The National Guard's actions regarding Wetherill's retirement from active military status after 30 years of active service, as discussed in 10 U.S.C. § 14507, is "integrally related to the military's unique structure" and therefore is nonjusticiable under Feres and its progeny. See Luckett, 290 F.3d at 499; see also Walch, 533 F.3d at 301; Mier, 57 F.3d at 749 (stating that "[g]uard technicians' challenges to

11

discharge by the Guard and termination from technician employment are nonjusticiable because judicial review 'would seriously impede the military in performance of its vital duties'"). Wetherill's retaliation claim is also barred in light of the military component of her military technician status. See Brown, 227 F.3d 295 (5th Cir. 2000). Finally, to the extent that Wetherill seeks equitable remedies, the court's analysis is the same and such claims are similarly barred. Watson, 886 F.2d at 1008.

In her opposition to the motions to dismiss, Wetherill contends that the plain language of 10 U.S.C. § 10216(a), which describes military technicians as "civilian employees," combined with the language of Title VII, "unequivocally announces that dual status technicians are to be afforded the same substantive rights afforded any other federal civilian employee." Docket 15, page 10. Such an argument has been rejected by other courts. See Walch, 533 F.3d at 299 (stating that reference to technician's "civilian status [was] an introduction to provisions primarily concerned with the annual requests to Congress for authorizing specific numbers of technician positions"); Williams v. Wynne, 533 F.3d 360, 367 (5th Cir. 2008) (stating that Title VII claims may be precluded by Feres "notwithstanding the statement in § 10216(a) that 'a military technician (dual status) is a Federal civilian employee'"); cf Jentoft v. United States, 450 F.3d 1342, 1348-49 (Fed. Cir. 2006) (finding that military technician brought a justiciable claim under the Equal Pay Act as a civilian

12

employee under § 10216); but see Walch, 533 F.3d at 300 (declining to apply Jentoft to Title VII claims because it "would remove the Feres doctrine as a bar to any federal statutory claims brought by National Guard technicians" and such a "doctrinal revolution has not been noticed by other circuit courts"). This court similarly rejects the argument that the language of § 10216 alters the application of Feres to Title VII, because such a holding would ignore the significant case law to the contrary that discusses the limited availability of Title VII to dual-status military technicians such as Wetherill.

Wetherill argues that she should be given the benefits of discovery to make the case that defendants' conduct was not based on her military status, but was based in impermissible discrimination. Even if Wetherill could establish that defendants' conduct was based on discrimination and not on her military qualifications, it is the *nature* of the decisions made with regard to her mandatory removal date and work assignments, which decisions are of undeniable military character, which render the claim nonjusticiable under Feres. As the Fifth Circuit said,

> a court may not reconsider what a claimant's superiors did in the name of personnel management-demotions, determining performance level, reassignments to different jobs-because such decisions are integral to the military structure. Some of those decisions might on occasion be infected with the kinds of discrimination that Title VII seeks to correct, but in the military context the disruption of judicially examining each claim in each case has been held to undermine other important concerns.

Walch, 533 F.3d at 301.

For these reasons, the court concludes that Wetherill's complaints are nonjusticiable under the Feres doctrine, and that this court therefore lacks subject matter jurisdiction over her Title VII complaints. Pursuant to the Eighth Circuit's disposition in Wood, 968 F.2d at 740, and Hupp, 144 F.3d at 1148, Wetherill's complaint is dismissed without prejudice. Therefore, good cause appearing, it is hereby

ORDERED that the motion to dismiss filed by defendants Doohen, Johnson, and the South Dakota Army National Guard (Docket 9) is GRANTED without prejudice.

IT IS FURTHER ORDERED that the motion to dismiss filed by defendants Geren and the Army National Guard (Docket 11) is GRANTED without prejudice.

Dated July 31, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE